# EXHIBIT A

Electronically Received 11/22/2024 10:38 AM

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
**11/22/2024**
Chad Finke , Executive Officer / Clerk of the Court
By: _____ D. Drew _____ Deputy

1  JOSEPH H. SAUNDERS, ESQ.  (SBN # 101927)
**SAUNDERS & WALKER, P.A.**
2  1901 Avenue of the Stars, 2nd Floor
Los Angeles, CA  90067
3  Tel:    727-579-4500
Fax:    727-577-9696
4  joe@saunderslawyers.com

5  Attorney for Plaintiff
*John Doe J.D.*
6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                    **FOR THE COUNTY OF ALAMEDA**

9  JOHN DOE J.D.                                    Case No. 22CV024411

10              Plaintiff,                          **THIRD AMENDED COMPLAINT**
                                                    **FOR DAMAGES:**
11  vs.

12                                                  1.  **NEGLIGENCE—NEGLIGENT**
13  ARCHBISHOP TIMOTHY BROGLIO, THE                     **SUPERVISION, NEGLIGENT**
    ROMAN CATHOLIC ARCHBISHOP FOR                       **RETENTION**
14  MILITARY SERVICES, a religious corporation
    sole; ARCHDIOCESE FOR THE MILITARY              2.  **NEGLIGENCE- NEGLIGENT**
15  SERVICES, a tax-exempt religious corporation,       **SUPERVISION OF PLAINTIFF-**
    and ARCHBISHOP TIMOTHY CARDINAL                     **THEN A MINOR**
16  DOLAN, THE ARCHBISHOP of the
    ARCHDIOCESE OF NEW YORK, a religious           Filed Pursuant to Code of Civil Procedure
17  corporation sole; THE ARCHDIOCESE OF           Section 340.1, as amended by Assembly
    NEW YORK, a tax-exempt religious               Bill 218
18  corporation; and DOES  3-100, inclusive,
19                                                  **DEMAND FOR JURY TRIAL**
20              Defendants.

21

22

23

24  _____/

25

26        Plaintiff, JOHN DOE J.D. ("Plaintiff") sues the Defendant, ARCHBISHOP TIMOTHY

27  BROGLIO,    ARCHBISHOP    TIMOTHY    BROGLIO,    THE    ROMAN    CATHOLIC

28  ARCHBISHOP    FOR    MILITARY    SERVICES,    a    religious    corporation    sole;    and

                                        -1-

ARCHDIOCESE FOR THE MILITARY SERVICES, a tax-exempt religious corporation:

ARCHBISHOP TIMOTHY CARDINAL DOLAN, THE ARCHBISHOP OF THE

ARCHDIOCESE OF NEW YORK, a religious corporation sole; THE ARCHDIOCESE OF

NEW YORK, a tax-exempt religious corporation , and DOES 3-100, inclusive (collectively

"Defendants"), and alleges:

### PARTIES, JURISDICTION, AND VENUE

1.    At all relevant times, Plaintiff JOHN DOE J.D. was a natural person who was a

citizen of the state of California during the period of child sexual abused alleged herein. Plaintiff

was born in 1962 and was a sexually abused between 1974 and 1976 while he was a minor child

by an employee or agent of Defendants at a Catholic Church facility on McClellan Air Force

Base in Sacramento County, California. At that time, the church was located within the

Archdiocese for Military Services as it was on the property of McClellan Air Force Base.

Plaintiff brings this Complaint pursuant to *Code of Civil Procedure Section 340.1*, as amended

by California Assembly Bill 218, for damages suffered as a result of childhood sexual assault at

the hands of the Defendants, which damages far exceed the $25,000.00 minimum jurisdictional

limits of this court.

2.    At all times material hereto, Defendant, ARCHBISHOP TIMOTHY BROGLIO, THE

ROMAN CATHOLIC ARCHBISHOP FOR MILITARY SERVICES (herein after referred to as

AMS) was the head of a religious corporation sole, incorporated in Washington, DC, with its

principal place of business in Washington, DC, and was authorized to, and did, conduct business

in the State of California, which includes but is not limited to civil corporations, decision making

entities, officials, agents and employees to act on its behalf.  At all times relevant to this

Complaint, Defendant ARCHBISHOP TIMOTHY BROGLIO, THE ROMAN CATHOLIC

ARCHBISHOP FOR MILITARY SERVICES conducted substantial business in, and was responsible for organizational operations in, Sacramento County on McClellan Air Force Base. ARCHBISHOP TIMOTHY BROGLIO, THE ROMAN CATHOLIC ARCHBISHOP FOR MILITARY SERVICES and were responsible for the funding, staffing, and direction of the facilities and institutions within its geographic area, which encompassed McClellan Air Force Base. ARCHBISHOP TIMOTHY BROGLIO, THE ROMAN CATHOLIC ARCHBISHOP FOR MILITARY SERVICES were the primary entities owning, operating, and controlling the activities and behavior of its employees and agents at Defendant, ARCHBISHOP TIMOTHY BROGLIO, THE ROMAN CATHOLIC ARCHBISHOP FOR MILITARY SERVICES, including Father John Doe (not a defendant in this case), DOES 3 - 100, and all other employees, agents, and supervisors of Defendants.  Plaintiff is further informed, believes and thereon alleges that Defendant ARCHBISHOP TIMOTHY BROGLIO, THE ROMAN CATHOLIC ARCHBISHOP FOR MILITARY SERVICES a tax-exempt religious corporation had sole authority and responsibility to control and supervise the ministry of Father John Doe from at least 1974 through 1976.

3.      Defendant ARCHDIOCESE FOR THE MILITARY SERVICES (all Washington DC Military entities hereinafter referred to as AMS) at all times material hereto, was a tax-exempt religious corporation incorporated in the State of Maryland with its principal place of business in Washington, D.C.; and was authorized to, and did, conduct business in the State of California, which includes but is not limited to civil corporations, decision making entities, officials, agents and employees to act on its behalf.  At all times relevant to this Complaint, Defendant AMS conducted substantial business in, and was responsible for organizational operations in, Sacramento County on McClellan Air Force Base. AMS was responsible for the funding,

staffing, and direction of the facilities and institutions within its geographic area, which encompassed McClellan Air Force Base. AMS was the primary entity owning, operating, and controlling the activities and behavior of its employees and agents at Defendant, , including Father John Doe (not a defendant in this case), DOES 3 - 100, and all other employees, agents, and supervisors of Defendants.  Plaintiff is further informed, believes and thereon alleges that Defendant AMS had sole authority and responsibility to control and supervise the ministry of Father John Doe from at least 1974 through 1976.

4.    Defendant ARCHBISHOP TIMOTHY CARDINAL DOLAN, THE ARCHBISHOP OF THE ARCHDIOCESE OF NEW YORK, a religious corporation sole; THE ARCHDIOCESE OF NEW YORK, a tax-exempt religious corporation at all times material hereto, was a tax-exempt religious corporation incorporated in the State of New York with its principal place of business in New York City, New York, (New York entities herein after referred to as ADNY).; and was authorized to, and did, conduct business in the State of California, which includes but is not limited to civil corporations, decision making entities, officials, agents and employees to act on its behalf.  At all times relevant to this Complaint, Defendant ADNY conducted substantial business in, and was responsible for organizational operations in, Sacramento County on McClellan Air Force Base. ADNY was responsible for the funding, staffing, and direction of the facilities and institutions within its geographic area, which encompassed McClellan Air Force Base. ADNY was the primary entity owning, operating, and controlling the activities and behavior of its employees and agents at Defendant, , including Father John Doe (not a defendant in this case), DOES 3 - 100, and all other employees, agents, and supervisors of Defendants.  Plaintiff is further informed, believes and thereon alleges that

Defendant ADNY had sole authority and responsibility to control and supervise the ministry of Father John Doe from at least 1974 through 1976.

5.    While the Archdiocese for The Military Services, the tax-exempt religious corporation incorporated in Maryland was created in 1986 by Pope John Paul II, its history dates back to World War I when an Auxiliary Bishop of New York, Patrick Hayes, was appointed the first leader of the military diocese for the US armed forces. Hayes was succeeded by Francis Cardinal Spellman, the Archbishop of New York as head of the military diocese. Upon Spellman's death in 1967 and was succeeded by Terence Cardinal Cooke who also replaced Spellman as the Archbishop of New York. Successive episcopal appointments continued until Pope John Paul II created the Archdiocese for The Military Services and moved its headquarters to Washington, DC.

6.    Plaintiff is informed and believes and alleges thereon that, at all relevant times, Defendants AMS and ADNY employed Father John Doe as an agent and had the ability to control and supervise Father John Doe's activities. Defendants AMS and ADNY were the entities that supervised its employees and agents, including its priests, teachers, and administrators, who supervised minor children, including those on its premises and in its programs. At all times material hereto, Father John Doe was under the direct supervision, employ and control of Defendant AMS and ADNY. In approximately 1974, Father John Doe physically perpetrated acts of sexual assault upon Plaintiff in Sacramento County, California when Plaintiff was a minor child.

7.    Plaintiff is informed and believes and thereon alleges that Father John Doe was a cleric with AMS and ADNY, and DOES 3 - 100, and for numerous years was assigned as those entities as a priest.

8.      Plaintiff is informed and believes and thereon alleges that the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Defendants DOE 3 - 100, inclusive, are currently unknown to Plaintiff, who therefore sues the DOE Defendants by such fictitious names, and who will amend the Complaint to show their true names and capacities when such names have been ascertained.  Plaintiff is informed and believes and thereon alleges that these DOE Defendants are legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that cause the injuries and damages alleged in this Complaint.

9.      Plaintiff is informed and believes and thereon alleges that, at all relevant times, there existed a unity of interest and ownership among all Defendants and each of them, such that an individuality and separateness between Defendants ceased to exist.  Defendants were the successors-in-interest and/or alter egos of the other Defendants in that they purchased, controlled, dominated and operated each other without separate identity, observation of formalities, or any other separateness.  To continue to maintain the façade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetuate a fraud and injustice.

10.      Plaintiff is informed and believes and thereon alleges that at all times material hereto, Defendants were the agents, representatives and/or employees of each and every other Defendant and were acting within the course and scope of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.  At all times material hereto, Defendants were the trustees, partners, servants, joint venturers, shareholders, co-conspirators, contractors, and/or employees of each and every other Defendant, and the acts and omissions alleged herein were done by them, acting individually, through such capacity and within the scope of their authority and with the permission and consent of each and every other Defendant, and that such conduct was thereafter

1    ratified by each Defendant, and that each Defendant is jointly and severally liable to Plaintiff.

2    11.    While religious belief is absolutely protected, conduct is not protected, and the

3    actions alleged herein below were illegal, secularly motivated conduct that is regulated by the

4    law.

5                                              **FACTS**

6    12.    Plaintiff is informed and believes that Father John Doe was ordained a Roman

7    Catholic priest prior to 1974 and was employed by the Defendant AMS and ADNY. Father John

8    Doe remained under the direct supervision, employ and control of Defendants AMS and ADNY

9    from at least 1974 until at least 1976.  While employed by AMS and ADNY, Father John Doe

10   was employed as a Catholic priest working in and for the Defendant AMS and ADNY including

11   McClellan Air Force Base in Sacramento County, California under the direct supervision and

12   

13   control of AMS and ADNY from at least 1974 to 1976.  While he was employed as a Catholic

14   priest working for the Defendants AMS and ADNY, Defendants placed Father John Doe in

15   positions where he had access to, and worked with, children as an integral part of his work.

16   

17   13.    Father John Doe is believed to have previously sexually assaulted victims other

18   than Plaintiff prior to the time he sexually assaulted Plaintiff.  In 1962, the Vatican in Rome

19   issued a Papal Instruction binding upon all bishops and priests throughout the world, including

20   the archbishops, bishops, and priests of AMS and ADNY. The Instruction was binding upon

21   AMS and ADNY until 2001.  The Instruction directed that allegations and reports of sexual abuse

22   of children by priests were required to be kept secret and not disclosed to civil authorities such

23   

24   as law enforcement, to co-employees or supervisors of parish priests, or to parishioners generally.

25   14.    Defendants' protocols require archbishops and bishops to keep *subsecreto* files

26   

27   also known as confidential files.  These files are not to be made public.

28

15.     Because of problems related to sexual misconduct by Catholic clergy, the Catholic Church and other organizations sponsored treatment centers for priests that had been involved in sexual misconduct.  One such treatment center is the St. John Vianney Center, founded in 1946, and touted on their website as "the longest running, internationally renowned, behavioral health facility in North America for clergy and religious."  Similarly, the Servants of the Paraclete "is an international religious community founded in 1947 with a specific ministry to serve fellow priests and priests who are facing a particular challenge in their vocations and lives" with locations across the country including in the states of Missouri and New Mexico.  A third similar treatment provider for priests who engage in sexual misconduct is the Saint Luke Institute, with locations in the United States located in Maryland, Kentucky, and Missouri.

16.     Sexual abuse of minors by Catholic clergy has been a reality in the Catholic Church for centuries but has remained covered by deep secrecy.  This secrecy is rooted in the official policies of the Catholic Church which are applicable to all Catholic archbishops and bishops and in fact are part of the practices of each archbishop and bishop, including Defendants AMS and ADNY. Sexual abuse of minors by Catholic clergy and religious leaders became publicly known in the mid-1980's as a result of media coverage of a case in Lafayette, Louisiana. Since that time, the media has continued to expose cases of clergy sexual abuse throughout the United States.  In spite of these revelations, as well as the many criminal and civil litigations the Church has been involved in as a result of clergy sexual abuse of minors, the archbishops and bishops and other church leaders continue to pursue a policy of secrecy.

17.     All of the procedures required in the so-called "Dallas Charter" have been previously mandated by Defendants in both the 1922 and 1962 documents but were consistently ignored by Catholic archbishops and bishops.  In place of the required processes, which would

have kept a written record of cases of clergy sexual abuse, the religious superiors applied a policy of the clandestine transfer of accused priests from one local or diocesan assignment to another or from one archdiocese to another. The receiving parishioners, and often the receiving pastors, were not informed of any prior accusations against those priests of sexual abuse of minors.

18.    Refusal to disclose sexually abusing clerics to parishioners and even to fellow clerics has been one way utilized by Defendants to maintain secrecy. Another has been to use various forms of persuasion on victims or their families to convince them to remain silent about incidents of abuse. These forms of persuasion have included methods that have ranged from sympathetic attempts to gain silence to direct intimidation to various kinds of threats. In so doing, the clergy involved, from religious superiors to priests, have relied on their power to overwhelm victims and their families.

19.    In or about 1974, when Plaintiff was a 12-year-old child, Plaintiff was sexually assaulted by Father John Doe. Father John Doe's sexual assault on the Plaintiff is a result of Defendant AMS and ADNY's cover- up, as statutorily defined by Code of Civil Procedure, §341.1(b).

20.    Plaintiff was raised in California in a devout Catholic family. When Plaintiff was 12 years old, his family attended Catholic services on the military base at McClellan Air Force Base in Sacramento County, California, which was owned and operated by Defendants AMS and ADNY. Plaintiff and Plaintiff's family came in contact with Father John Doe as an agent and representative of Defendants.

21.    Plaintiff participated in youth activities and church activities at Defendants' facilities. Plaintiff was taught the theology and tenets of the Roman Catholic Church on matters of faith, morals and religious doctrine. Plaintiff therefore developed great admiration, trust,

reverence, and respect for, and obedience to, the Roman Catholic Church and clergy who occupied positions of respect, and to obey Father John Doe by Defendant AMS and ADNY.

22.    As a minor, Plaintiff regularly attended mass and was allowed to spend time alone during non-mass hours with Father John Doe who was employed by AMS and ADNY at McClellan Air Force Base.  Accordingly, a special relationship was formed between Plaintiff, then a minor, and Defendants. As delineated in *California Evidence Code* §1030-1034, codifying the clergymen-penitent privilege, the fact that a special relationship between Defendants and parishioners not only exists, but also extends to non-spiritual matters.

23.    During these activities provided by Defendants and Father John Doe, which included spiritual direction and guidance to Plaintiff and Plaintiff's family, Plaintiff, as a minor and vulnerable child, was dependent on Defendants and their agents, including Father John Doe. During these activities, Defendants and their agents had control of, and authority over, Plaintiff, and accepted the entrustment of Plaintiff.

24.    In approximately 1974, when Plaintiff was approximately 12 years old, Father John Doe, while performing his duties as a priest employed by Defendants, repeatedly sexually assaulted, molested and abused Plaintiff at McClellan Air Force Base by repeatedly touching and fondling his genitals and forcibly performing oral sex on the child.

25.    Prior to those assaults, Priest Doe had acted as a religious and spiritual counselor, and had befriended Plaintiff and gained Plaintiff's trust and confidence as a spiritual guide, authority figure and trustworthy mentor.

26.    Seeing Father John Doe as a trustworthy member of the clergy of Defendants, Plaintiff was conditioned to comply with Father John Doe's direction and to respect him as a person of authority in spiritual, ethical, and educational matters. Father John Doe's conduct

constituted "grooming" of Plaintiff and culminated in his repeated forcible sexual assault upon the Plaintiff.

27.     Father John Doe utilized Defendants' facilities and institutions to gain access to Plaintiff. At all relevant times, Father John Doe was referred to as "Father" and wore the priest collar and attire. This signified to people that Father John Doe was in good standing with Defendants and was authorized by Defendants to act as a priest and agent of the Church. It was by virtue of Father John Doe's position as a priest of Defendants that he met and groomed Plaintiff, established trust with Plaintiff, and manipulated that trust in order to sexually assault and abuse Plaintiff when Plaintiff was 12 years old.

28.     Father John Doe sexually abused Plaintiff for sexual gratification which was, at least in part, based on the Plaintiff's gender, who was a minor boy at the time.

29.     This child sexual abuse constitutes "childhood sexual assault" pursuant to *Code of Civil Procedure* §340.1(d) as amended by Assembly Bill 218, including any act committed against Plaintiff that occurred when the Plaintiff was under the age of 18 years and that would have been proscribed by §266j of the <u>Penal Code</u>; paragraph (1) or (2) of subdivision (b), or of subdivision (c), of §287 or of former §288a of the <u>Penal Code</u>; subdivision (h), (i), or (j) of §289 of the <u>Penal Code</u>; any sexual conduct as defined in paragraph (1) of subdivision (d) of §311.4 of the <u>Penal Code</u>; §647.6 of the <u>Penal Code</u>; and/or any prior laws of this state of similar effect at the time the act was committed.

30.     Plaintiff did not, and was not, able to give free or voluntary consent to the sexual acts perpetrated against him by Father John Doe as Plaintiff was a minor child at the time of the abuse alleged herein.

31.    By using his position within Defendants' institutions, Defendants demanded and required that Plaintiff respect Father John Doe in his position as a priest, teacher, spiritual advisor, confidant, counselor and mentor for Defendants.

32.    As a direct and proximate result of his sexual abuse by Father John Doe, which was enabled and facilitated by Defendants, Plaintiff has suffered and will continue to suffer severe mental and emotional distress including, but not limited to symptoms of PTSD, severe anxiety, depression, lost interest and pleasure in activities, an inability to concentrate, feeling of self-blame, feelings of estrangement from friends and/or family, hypervigilance, a lost sense of worth, a sense of being tainted, suicidal ideation, and a loss of sexual desire.

33.    In addition, as a direct and proximate result of Plaintiff's sexual abuse by Father John Doe, which was enabled and facilitated by Defendants, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

34.    Father John Doe, at all times material hereto, was an employee, agent and/or representative of Defendants. Defendants are directly and vicariously liable for the abuse committed by Father John Doe, including but not limited to, through the theories of respondeat superior, ratification, and authorization. Father John Doe's sexual misconduct with Plaintiff occurred while he was functioning on behalf of Defendants and was made possible because of that agency.

35.    Under Church protocol and practice, in return for the promise of obedience by a priest, the religious superior accepts responsibility for the care and welfare of a priest as well as to supervise the priest's ministry. A Catholic military chaplain such as Father John Doe may not engage in any public ministry without the permission of the archbishop. By allowing a priest to

engage in public ministry, such as by allowing him to wear his religious/priestly attire and hold himself out as a priest, the archbishop is certifying that the priest is in good standing and sexually safe.

36.     The Defendants ratified and authorized Father John Doe's sexual abuse of Plaintiff by (1) failing to discharge, dismiss, discipline, suspend and/or supervise Father John Doe or other priests known by Defendants to have sexually abused children, or to have been accused of sexually abusing children, (2) actively shielding Father John Doe from responsibility for his sexual assault of Plaintiff and other minors, (3) failing to acknowledge the existence of complaints against Father John Doe of sexual assault on Plaintiff and minors, (4) failing to report such complaints to civil or criminal authorities, (5) providing financial support to Father John Doe during and/or after the sexual abuse of Plaintiff and/or others, and (6) failing to take steps to timely remove Father John Doe from the priesthood so as to permanently prevent him from using his authority bestowed upon him by Defendants to gain access to minors and sexually abuse them.

37.     By taking the above wrongful, negligent, and/or intentional actions and/or failing to act after having knowledge or reason to know of such sexual abuse of Plaintiff and/or other minors, Defendants ratified and authorized Father John Doe's sexual abuse of minors.  By ratifying Father John Doe's sexual abuse of minors, Defendants in legal effect committed and caused the sexual abuse of Plaintiff when he was a minor.

38.     Defendants failed to uphold numerous mandatory duties imposed upon them by state and federal law, and by written policies and procedure applicable to Defendants, including but not limited to:

    a.  Duty to protect minor children in their care;

    b.  Duty to provide adequate supervision to minor children in their care;

c.  Duty to ensure that any direction given to employees is lawful and that adults act fairly, responsibly and respectfully toward other adults and minor children;

d.  Duty to train teachers, mentors, advisors, priests, and administrators so that they are aware of their individual responsibility for creating and maintaining a safe environment;

e.  Duty to supervise employees and minor children in their care, enforce rules and regulations prescribed for childcare organizations and exercise reasonable control over minor children to protect their health and safety;

f.  Duty to properly monitor minor children, prevent and/or correct harmful situations or call for help when a situation is beyond their control;

g.  Duty to ensure that personnel are actually on-hand and supervising minors;

h.  Duty to provide enough supervision to minor children, including Plaintiff;

i.  Duty to supervise diligently;

j.  Duty to act promptly and diligently;

k.  Duty to abstain from injuring the person or property of Plaintiff or infringing upon any of her rights (Civil Code§ 1708); and,

l.  Duty to report suspected incidents of child abuse and more specifically childhood sexual abuse.

39.    As a minor child, Plaintiff was a parishioner within Defendants' organization where Father John Doe was employed, retained, and worked.  Plaintiff was under Defendants' direct supervision, care and control.  This constituted a special relationship, fiduciary relationship and/or special care relationship between Plaintiff and Defendants.  Additionally, as a minor child under the custody, care and control of Defendants, Defendants stood *in loco parentis* with respect to Plaintiff.  As the responsible parties and/or employers controlling Father John Doe, the Defendants were also in a special relationship with Plaintiff and owed special duties to Plaintiff.

40.     Defendants knew or should have known, or were otherwise on notice, that Father John doe had engaged in unlawful sexual-related conduct with minors in the past, and/or was continuing to engage in such conduct with Plaintiff, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by Father John Doe.

41.     Defendants had a duty to disclose these facts to Plaintiff, his parents and others, but negligently and/or intentionally suppressed, concealed, or failed to disclose this information for the express purposes of maintaining Father John Doe's image as an ethical, wholesome, safe, and trusted spiritual leader at and within the institution run by the Defendants.  The duty to disclose this information arose from the special, trusting, confidential, fiduciary, and *in loco parentis* relationship between Defendants and Plaintiff.

42.     Instead, Defendants ignored and/or concealed the sexual abuse of Plaintiff and others by Father John Doe and continued to allow numerous children, including the Plaintiff, to be in private, secluded areas with Father John Doe, despite knowledge of Father John Doe's prior sexually abusive acts toward minors.

43.     Plaintiff is informed, believes and thereon alleges that Defendants had been given prior notice of inappropriate conduct committed by Father John Doe, including the facts alleged herein.

44.     Defendants failed to report and hid and concealed from Plaintiff, Plaintiff's parents, other minor children in their care and their parents, law enforcement authorities, civil authorities, and others, the true facts and relevant information necessary to bring Father John Doe and other clerical perpetrators to justice earlier for the sexual misconduct he committed with minors and to protect those entrusted in their care, including Plaintiff.

45.     Defendants also implemented various measures designed to make or which effectively made Father John Doe's conduct harder to detect, including but not limited to:

       a.  Permitting Father John Doe to remain in a position of authority and trust after Defendants knew, or should have known, that he was a pedophile;

       b.  Holding Father John Doe out to Plaintiff, his parents, other children and parents, the community and the public as being in good standing and trustworthy;

       c.  Permitting Father John Doe to come into contact with minors, including Plaintiff, without adequate supervision;

       d.  Failing to inform or otherwise concealing from Plaintiff's parents and law enforcement the fact that Plaintiff and others were or may have been sexually abused after Defendants knew or should have known that Father John Doe may have sexually abused Plaintiff or others, thereby enabling Plaintiff to continue to be endangered and sexually abused, and/or creating the circumstances where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff; and,

       e.  Failing to take reasonable steps and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Father John Doe with minor children, including students, altar servers, and minor parishioners.

46.     At the time of Father John Doe's sexual assault as defined by *Code of Civil Procedure* §340.1(d), California's Penal Code, and other provisions of California law, Defendants knew or should have known, or were otherwise on notice of prior acts of child sexual abuse committed by Father John Doe, and despite such knowledge and/or notice, failed to take reasonable steps or implement reasonable safeguards to protect Plaintiff from Father John Doe's sexual abuse.  These acts and/or omissions on the part of Defendants were committed in spite of

their ability to exercise control over the personal and business affairs of Father John Doe. Accordingly, Defendants are liable for Father John Doe's sexual abuse of Plaintiff in that their wrongful, intentional and/or negligent acts were a legal cause of Plaintiff's abuse.

### FIRST CAUSE OF ACTION - NEGLIGENCE
**(As to All Defendants)**

47.     Plaintiff re-alleges and incorporates paragraphs 1 through 44 of this Complaint as though fully set forth herein.

48.     Defendants' conduct, actions, and omissions served to create an environment in which Father John Doe was afforded years of continuous secluded access to minor children, including Plaintiff, who was approximately twelve years of age at the time he was initially sexually abused, molested, and assaulted by Father John Doe.

49.     At the time Father Doe performed the acts alleged herein, it was or should have been reasonably foreseeable to Defendants that by continuously exposing and making Plaintiff available to Father Doe, Defendants were placing Plaintiff at grave risk of being sexually abused by him.  By knowingly subjecting Plaintiff to this foreseeable danger, Defendants were duty-bound to take reasonable steps and implement reasonable safeguards to protect Plaintiff from Father Doe.  Further, at all times alleged herein, Defendants possessed a sufficient degree of control over Father Doe's personal and business affairs so as to keep Father Doe away from Plaintiff and other minor children and prevent any sexual molestation or abuse against them. Defendants, however, failed to take reasonable steps or implement reasonable safeguards for Plaintiff's protection.

50.     As a direct and proximate result of Defendants' failure to protect Plaintiff from Father John Doe, Plaintiff has suffered and will continue to suffer severe physical, psychological, emotional and economic harm, including, but not limited to symptoms of PTSD, severe anxiety,

loss of interest and pleasure in activities, an inability to concentrate, feelings of self-blame, feelings of estrangement from friends and/or family, hypervigilance, a lost sense of worth, a sense of being tainted, suicidal ideation, and a loss of sexual desire, expenses for mental health professionals and other medical treatment, and loss of past and future earnings and other economic harm in a sum to be proven at the time of trial.

**Negligent Supervision of Father John Doe**

51.    At all relevant times, Defendants owed Plaintiff a duty to provide supervision over Father John Doe, to use reasonable care in investigating Father Doe's background, and to provide adequate warning to the Plaintiff, and others of Father Doe's dangerous propensities.

52.    Defendants, by and through their respective agents, servants, and employees, knew or should have known of Father John Doe's dangerous and exploitative propensities. Despite such knowledge, Defendants negligently failed to supervise Father John Doe, who had the propensity and ability to commit wrongful acts against Plaintiff, to work closely with minor children, including the Plaintiff.  Defendants failed to provide reasonable supervision of Father John Doe, failed to use reasonable care in investigating Father Doe, and failed to provide adequate warning to Plaintiff and others of Father Doe's dangerous propensities and unfitness. Defendants further failed to take reasonable measures to prevent the sexual abuse, molestation, and harassment of minor children, including Plaintiff.

53.    As an institution entrusted with the care of minors, where staff, employees, agents and management, such as Father John Doe, were placed in contact with minor children, the Defendants expressly and implicitly represented that these individuals, including Father Doe, were not a threat to children and others who would fall under Father Doe's influence, control, direction, and guidance.

54.     Defendants were aware, or reasonably should have been aware, of how vulnerable children were to sexual harassment, molestation, and abuse by mentors, advisors, teachers, counselors and other persons of authority within the Defendants' scope of influence and control.

55.     Defendants breached their duty to Plaintiff, by *inter alia*, failing to adequately monitor and supervise Father John Doe and failing to stop Father John Doe from committing wrongful sexual acts with minors, including Plaintiff.  Plaintiff is informed and believes that employees, staff and agents of Defendants knew and/or suspected the abuse was occurring at the time and failed to investigate the matter further.

56.     As a result of the above-described conduct, Plaintiff has suffered and will continue to suffer physical, psychological, emotional and economic harm in a sum to be proven at trial.

## Negligent Retention of Father John Doe

57.     At all relevant times, Defendants owed Plaintiff a duty not to retain Father John Doe given his pedophile propensities, which Defendant knew or should have known had they engaged in a meaningful and adequate investigation of his background.

58.     As institutions entrusted with the care of minors, where staff, employees, agents, and management, such as Father John Doe were placed in contact with minors, Defendants expressly and implicitly represented that these individuals, including Father John Doe were not a sexual threat to children and others who would fall under Father Doe's control, influence, direction, and guidance.

59.     During the time when Father John Doe was grooming and sexually abusing the Plaintiff, Defendants knew or had reason to know, suspect or otherwise be on notice, of Father Doe's misconduct; that he was a pedophile; that he had sexually assaulted other minors; and that

Father Doe was or had been sexually abusing Plaintiff, and Defendants failed to remove Father Doe from his position.

60.    Further, during the time when Father John Doe was grooming and sexually abusing the Plaintiff, Defendants knew or had reason to know, suspect or otherwise be on notice, of Father John Doe's misconduct, that he was a pedophile, that he had sexually assaulted other minors, and that Father Doe was and had sexually abused Plaintiff, and Defendants failed to report Father Doe's actions to law enforcement or to anyone.

61.    On the contrary, although Defendants knew that Father John Doe was a pedophile and had sexually assaulted other minors, Defendants accepted Father John Doe and continued to allow him access to children including, but not limited to, the Plaintiff.

62.    As a result, Plaintiff was sexually abused by Father John Doe while he  was a minor child and has suffered, and will continue to suffer, severe mental and emotional distress including, but not limited to symptoms of PTSD, severe anxiety, lost interest and pleasure in activities, an inability to concentrate, feelings of self-blame, feelings of estrangement from friends and/or family, hypervigilance, a lost sense of worth, a sense of being tainted, suicidal ideation, and a loss of sexual desire, expenses for mental health professionals and other medical treatment, and loss of past and future earnings and other economic benefits according to proof at the time of trial.

### SECOND CAUSE OF ACTION –NEGLIGENCE
#### (As to All Defendants)

### NEGLIGENT SUPERVISION OF PLAINTIFF, THEN A MINOR

63.    Plaintiff re-alleges and incorporates herein paragraphs 1 through 43 of this Complaint as though fully set forth herein.

64.    Plaintiff's Second Cause of action is an alternative additional theory of

1  liability as alleged as against AMS, ADNY, and DOES 3 - 100.

2       65.    Defendants AMS, ADNY, and DOES 3 - 100, are liable for the acts and

3  omissions of their employees and agents, including Father John Doe, acting within the

4  course and scope of their employment and/or agency. At all times herein, Defendants'

5  employees, including Father Doe, were acting within the course and scope of their

6  employment.

7       66.    Defendants had a duty to provide supervision of Plaintiff, a minor, and to use

8
9  reasonable care in supervising Plaintiff, a minor, when Plaintiff was involved in activities

10  sponsored, supervised, organized, directed, and/or operated by Defendants AMS, ADNY,

and DOES 3 – 100 or their agents and employees.

11
12       67.    Defendants breached their duty of care by failing to properly and/or

13  adequately supervise Plaintiff, a minor, and by failing to use reasonable care in protecting

14  Plaintiff, a minor, from Father John Doe's misconduct of child sexual assault while Plaintiff

15  as a minor was involved in activities sponsored, supervised, organized, directed, and/or

16  operated by Defendants and their agents and/or employees.

17       68.    Defendants' breach of their duty to supervise and protect Plaintiff as a minor

18  was a substantial factor in Father John Doe's childhood sexual assaults upon Plaintiff.

19       69.    As a direct, legal, and proximate cause of Defendants AMS and ADNY and

20  Defendants DOE 3 – 100's acts, omissions and/or negligence, Father John Doe committed

21  acts of child sexual assault against Plaintiff.

22       70.    As a direct and proximate result of Defendants' acts and omissions Plaintiff

23  has suffered and will continue to suffer physical, psychological, emotional and economic

24  harm in a sum to be proven at the time of trial.

25  **PRAYER FOR RELIEF**

26  Wherefore, Plaintiff prays for the following relief against Defendants:

27
28

1.     For damages for past and future medical, psychotherapy, and related expenses according to proof at time of trial;

2.     For general damages for physical and mental pain and suffering and emotional distress in a sum to be proven at the time of trial;

3.     For damages for the past lost wages and past earning capacity and/or future lost wages and loss of earning capacity according to proof at time of trial;

4.     For treble damages as provided within CCP §340.1(b);

5.     For attorney fees pursuant to CCP 1021.5, civil code 52, or otherwise as allowed by law;

6.     For interest as allowed by law;

7.     For costs of suit herein; and,

8.     For such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiff, JOHN DOE J.D., hereby demands a trial by jury in this matter.


DATED: September 6, 2024.


SAUNDERS & WALKER, P.A.


Joseph H. Saunders
Attorney for Plaintiff, John Doe J.D.

-22-

# EXHIBIT B

ELECTRONICALLY FILED
Superior Court of California
County of Alameda
03/07/2025
Chad Finke, Executive Officer / Clerk of the Court
By: _____ V. Hutton _____ Deputy

1   JOSEPH H. SAUNDERS, ESQ.  (SBN # 101927)
    **SAUNDERS & WALKER, P.A.**
2   1901 Avenue of the Stars, 2nd Floor
    Los Angeles, CA  90067
3   Tel:    727-579-4500
    Fax:    727-577-9696
4   joe@saunderslawyers.com

5   Attorney for Plaintiff
    *John Doe J.D.*
6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                     **FOR THE COUNTY OF ALAMEDA**

10

11  JOHN DOE J.D.                           Case No. 22CV024411

12                                          **PLAINTIFF'S NOTICE OF POSTING**
                                            **JURY FEES**
13              Plaintiff,                  **Original Action Filed 12/22/2022**

14  vs.                                     **Plaintiff Unique ID:  929**

15

16  ARCHBISHOP  TIMOTHY  BROGLIO,  THE
    ROMAN   CATHOLIC   ARCHBISHOP   FOR
17  MILITARY  SERVICES,  a  religious  corporation
    sole;  ARCHDIOCESE  FOR  THE  MILITARY
18  SERVICES,  a  tax-exempt  religious  corporation,
    and  ARCHBISHOP  TIMOTHY  CARDINAL
19  DOLAN,   THE   ARCHBISHOP   of   the
    ARCHDIOCESE  OF  NEW  YORK,  a  religious
20  corporation sole; THE ARCHDIOCESE OF NEW
    YORK,  a  tax-exempt  religious  corporation,  and
21  Does 3-100, inclusive,
22

23

24

25              Defendants.

26

27

28  _____/

                                    1
                PLAINTIFF'S NOTICE OF POSTING JURY FEES

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that pursuant to *Code of Civil Procedure §631(b),* Plaintiff John Doe J.D. hereby submits the Jury Fee Deposit in the amount of $150.00 in the above-referenced matter.


DATED:  March 7, 2025                           SAUNDERS & WALKER, P.A.

                                                By: /s/ *Joseph H. Saunders*

                                                *Attorney for Plaintiff No. 929*

                                                John Doe J.D.

PLAINTIFF'S NOTICE OF POSTING JURY FEES

**<u>PROOF OF SERVICE</u>**

STATE OF CALIFORNIA            )
                              )                    ss:
COUNTY OF LOS ANGELES      )

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action.  My business address is 1901 Avenue of the Stars, 2nd Floor, Los Angeles, CA  90067. On the execution date below and in the manner stated herein, I served the following documents on all interested parties described as follows:

**PLAINTIFF'S NOTICE OF POSTING JURY FEES (Plaintiff No. 929)**

**BY ELECTRONIC SERVICE** — Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the notification addresses listed above through the use of an online e-service provider, such as e-mail, CASE ANYWHERE or ONE LEGAL. Pursuant to the Court Order Authorizing Electronic Service, I provided the document(s) listed above electronically on the CASE ANYWHERE Website to the parties on the Service List maintained on the CASE ANYWHERE Website for Judicial Council Coordinated Proceedings Number 5108, Northern California Clergy Cases ("JCCP 5108"), or on the attached Service List (if any). CASE ANYWHERE is the online e-service provider designated in JCCP 5108.

STATE — I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 7, 2025, at Los Angeles, California.

*/s/ Joseph H. Saunders*
_____
Joseph H. Saunders

PLAINTIFF'S NOTICE OF POSTING JURY FEES

# EXHIBIT C

# SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:

Rene C. Davidson Courthouse

Administration Building, 1221 Oak Street, Oakland, CA 94612

PLAINTIFF(S) / PETI

John Doe J.D.

Defendant Doe 1 et al

**FILED**
Superior Court of California
County of Alameda
06/11/2025
Clad Flike , Executive Officer / Clerk of the Court
By: _George Cabreg Games_ Deputy
Penelope Cabrera-Gamez

## NOTICE OF CASE REASSIGNMENT

CASE NUMBER:

22CV024411

EFFECTIVE    06/11/2025

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

| | |
|---|---|
| ASSIGNED JUDGE: | Somnath Raj Chatterjee |
| DEPARTMENT: | 21 |
| LOCATION: | Rene C. Davidson Courthouse |
| | Administration Building, 1221 Oak Street, Oakland, CA 94612 |
| PHONE NUMBER: | (510) 267-6937 |
| FAX NUMBER: | |
| EMAIL ADDRESS: | Dept21@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 1013)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate).  Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available.  For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

**NOTICE OF CASE REASSIGNMENT**

ACSC (Rev. 10/21)

**ASSIGNED FOR ALL PURPOSES TO**

JUDGE <u>Somnath Raj Chatterjee</u>

DEPARTMENT <u>21</u>

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference.  The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days."   The court's website contains this form and other ADR information.  If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

Penelope Cabrera-Gamez, Deputy Clerk

**NOTICE OF CASE REASSIGNMENT**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
1225 Fallon Street, Oakland, CA 94612

PLAINTIFF/PETITIONER:
John Doe J.D.

DEFENDANT/RESPONDENT:
Defendant Doe 1 et al

## CERTIFICATE OF MAILING

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda
06/11/2025
Chad Finke, Executive Officer / Clerk of the Court
By: _George Cabrera Gamez_ Deputy
Penelope Cabrera-Gamez

CASE NUMBER:
22CV024411

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Joseph H. Saunders
Saunders & Walker
1901 Avenue of the Stars, 2nd Floor
Los Angeles, CA 90067

Chad Finke, Executive Officer / Clerk of the Court

Dated: 06/11/2025                    By:

Penelope Cabrera-Gamez, Deputy Clerk

## CERTIFICATE OF MAILING

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>06/11/2025<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>Penelope Cabrera-Gamez |
| PLAINTIFF/PETITIONER:<br>John Doe J.D. | |
| DEFENDANT/RESPONDENT:<br>Defendant Doe 1 et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>22CV024411 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the attached document entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Joseph H. Saunders
Saunders & Walker
joe@saunderslawyers.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 06/11/2025                By:

Penelope Cabrera-Gamez, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda
06/11/2025
Chad Finke, Executive Officer / Clerk of the Court
By: _____ Deputy
Penelope Cabrera-Gamez

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
1225 Fallon Street, Oakland, CA 94612

PLAINTIFF/PETITIONER:
John Doe J.D.

DEFENDANT/RESPONDENT:
Defendant Doe 1 et al

**CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6**

CASE NUMBER:
22CV024411

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Notice of Case Reassignment (Civil) entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.

ARCHBISHOP TIMOTHY CARDINAL DOLAN, THE ARCHBISHOP of the ARCHDIOCESE OF NEW YORK, a religious corporation sole; THE ARCHDIOCESE OF NEW YORK, a tax-exempt religious corporation; joe@saunderslawyers.com

Archbishop Timothy Broglio, the Roman Catholic Archbishop for Military Services

Does 2 - 100

Defendant Doe 1

John Doe J.D.

Does 2 - 100

Joseph H. Saunders
Saunders & Walker
joe@saunderslawyers.com

John Doe J.D.

Chad Finke, Executive Officer / Clerk of the Court

Dated: 06/11/2025

By:

Penelope Cabrera-Gamez, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6**