UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE J.D.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ARCHBISHOP TIMOTHY BROGLIO, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-06289-JSC<br><br>**ORDER RE: AMS DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR TRANSFER OF VENUE**<br><br>Re: Dkt. No. 11, 24 |

　　Plaintiff sues the Archdiocese for the Military Services ("AMS"), AMS Archbishop Timothy Broglio, and the Archdiocese of New York ("ADNY") for negligence related to sexual abuse while a minor. (Dkt. No. 8.)[1] Now pending before the Court are AMS's and Archbishop Broglio's ("AMS Defendants'") motion to dismiss Plaintiff's third amended complaint and Plaintiff's motion for transfer of venue. (Dkt. Nos. 11, 24.) Having carefully considered the parties' submissions, and with the benefit of oral argument on October 23, 2025, the Court GRANTS AMS Defendants' motion to dismiss and DENIES Plaintiff's motion for transfer of venue. Plaintiff has not stated facts to plausibly allege a theory of AMS's liability for actions occurring prior to its corporate existence, and has not alleged any facts supporting claims against or actions taken by AMS Archbishop Broglio. Plaintiff therefore fails to state a claim against AMS Defendants and fails to plausibly allege personal jurisdiction.

\\

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

**I.   COMPLAINT ALLEGATIONS**

Between 1974 and 1976, when Plaintiff was a minor and California citizen, he was sexually abused by a "Father John Doe," an "employee or agent of Defendants at a Catholic Church facility on McClellan Air Force Base in Sacramento County, California." (Dkt. No. 8 ¶ 1.) Plaintiff's family "came in contact with Father John Doe" when attending Catholic services on McClellan Air Force Base. (*Id.* ¶ 20.) Plaintiff "regularly attended mass and was allowed to spend time alone during non-mass hours with Father John Doe," including at youth activities at the church. (*Id.* ¶¶ 21-22.) While "performing his duties as a priest employed by Defendants, [Father John Doe] repeatedly sexually assaulted, molested and abused Plaintiff at McClellan Air Force Base." (*Id.* ¶ 24.) Plaintiff has suffered and continues to suffer from severe mental and emotional distress and economic injuries. (*Id* ¶¶ 32-33.)

Father John Doe was ordained as a Roman Catholic priest before 1974. (*Id.* ¶ 12.) From at least 1974 to 1976, he was under AMS's and ADNY's "direct supervision, employ and control," and AMS and ADNY placed him "in positions where he had access to, and worked with, children as an integral part of his work." (*Id.*) Father John Doe "utilized Defendants' facilities and institutions to gain access to Plaintiff." (*Id.* ¶ 27.) His title and attire "signified" he was "in good standing with Defendants and was authorized to act as a priest and agent of the Church." (*Id.*) In addition, "[a] Catholic military chaplain such as Father John Doe may not engage in any public ministry without the permission of the archbishop." (*Id.* ¶ 35.) Father John Doe "is believed to have previously sexually assaulted victims other than Plaintiff prior to the time he sexually assaulted Plaintiff." (*Id.* ¶ 13). However, "[i]n 1962, the Vatican in Rome issued a Papal Instruction binding upon . . . AMS and ADNY until 2001," which "directed that allegations and reports of sexual abuse of children by priests were required to be kept secret." (*Id.*) "Defendants are directly and vicariously liable for the abuse committed by Father John Doe, including but not limited to, through the theories of respondeat superior, ratification, and authorization." (*Id.* ¶ 34)

Archbishop Broglio was at "all times material hereto . . . the head of a religious corporation sole, incorporated in . . . [and] with its principal place of business in Washington,

DC," but "was authorized to, and did, conduct business in the State of California, which includes but is not limited to civil corporations, decision making entities, officials, agents and employees to act on its behalf." (*Id.* ¶ 2.) Archbishop Broglio "conducted substantial business in, and was responsible for organizational operations in, Sacramento County on McClellan Air Force Base," was "responsible for the funding, staffing, and direction of the facilities and institutions within its geographic area, which encompassed McClellan Air Force Base," and was "the primary entit[y] owning, operating, and controlling the activities and behavior of its employees and agents," including Father John Doe. (*Id.*) He therefore "had sole authority and responsibility to control and supervise the ministry of Father John Doe from at least 1974 to 1976." (*Id.*)

AMS is a corporation incorporated in Maryland with its principal place of business in Washington D.C., but is "authorized to, and did, conduct business in" California. (*Id.* ¶ 3.) Because the Catholic Church Plaintiff attended was on McClellan Air Force Base, it was "located within" AMS. (*Id.* ¶ 1.) "At all times relevant to this Complaint," AMS "conducted substantial business in, and was responsible for organizational operations" on McClellan Air Force Base, was "responsible for the funding, staffing, and direction of the facilities and institutions within" McClellan Air Force Base, was "the primary entity owning, operating, and controlling the activities and behavior of its employees and agents at Defendant," and "had sole authority and responsibility to control and supervise the ministry of Father John Doe from 1974 to 1976." (*Id.* ¶ 3). Plaintiff also explains:

> While the Archdiocese for The Military Services, the tax-exempt religious corporation incorporated in Maryland was created in 1986 by Pope John Paul II, its history dates back to World War I when an Auxilary Bishop of New York, Patrick Hayes, was appointed the first leader of the military diocese for the US armed forces. Hayes was succeeded by Francis Cardinal Spellman, the Archbishop of New York as head of the military disocese. Upon Spellman's death in 1967 and was succeeded by Terence Cardinal Cooke who also replaced Spellman as the Archbishop of New York. Successive episcopal appointments continued until Pope John Paul II created the Archdiocese for The Military Services and moved its headquarters to Washington, DC.

(*Id.* ¶ 5.)

Plaintiff alleges AMS and ADNY employed Father John Doe "as an agent and had the

3

ability to control and supervise Father John Doe's activities." (*Id.* ¶ 6.) "[T]here existed a unity of interest and ownership among all Defendants and each of them, such that an individuality and separateness between Defendants ceased to exist." (*Id.* ¶ 9.) Because Defendants "purchased, controlled, dominated and operated each other without separate identity, observation of formalities, or any other separateness," Defendants were "the successors-in-interest and/or alter egos of the other Defendants." (*Id.*) Therefore, "[t]o continue to maintain the façade of a separate and individual existence between and among Defendants . . . would serve to perpetuate a fraud and injustice." (*Id.*)

## II.   PROCEDURAL HISTORY

Plaintiff sued AMS, AMS Archbishop Broglio, ADNY, and ADNY Archbishop Timothy Cardinal Dolan in Alameda County Superior Court alleging negligent supervision and retention of an unknown Father John Doe and negligent supervision of Plaintiff. (Dkt. No. 8.)[2] AMS Defendants removed the case to this Court based on diversity jurisdiction. (Dkt. No. 1.)[3] AMS Defendants now move to dismiss Plaintiff's claims against them. (Dkt. No. 11.) Plaintiff opposes AMS Defendants' motion to dismiss and moves to transfer venue. (Dkt. No. 24.) Plaintiff also voluntarily dismissed without prejudice his claims against ADNY Archbishop Timothy Cardinal Dolan. (Dkt. No. 32.)

## DISCUSSION

## I.   JUDICIAL NOTICE

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "There are only a few limited exceptions to this rule. A court may consider: (1) documents attached to the complaint; (2) documents incorporated by reference in the

---

[2] Under California law, "[t]here is no time limit for recovery of damages suffered as a result of childhood sexual assault," and a plaintiff "may recover up to treble damages against a defendant who is found to have covered up the sexual assault of a minor." Cal. Code Civ. P. § 340.1.

[3] Although AMS Defendants' removal attached Plaintiff's Third Amended Complaint (Dkt. No. 1-1 at 2-23), this district later noted the entry as erroneous and refiled the Third Amended Complaint at Docket No. 8. The Court treats the Third Amended Complaint at Docket No. 8 as the operative complaint.

4

1    complaint; and (3) matter that is judicially noticeable under Federal Rule of Evidence 201." *City*

2    *of Royal Oak Retirement Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal.

3    2012) (citing *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)).  A court may take

4    judicial notice of facts "not subject to reasonable dispute" because they are "generally known

5    within the court's territorial jurisdiction" or can be "accurately and readily determined from

6    sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  This includes

7    "undisputed matters of public record." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir.

8    2012); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir.

9    2008) (granting judicial notice of publicly available financial documents).

10   AMS Defendants request—and Plaintiff does not oppose—judicial notice of the articles of

11   incorporation for the Military Archdiocese, United States of America, Inc., incorporated in

12   Washington D.C. on June 19, 1985; and the Archdiocese for the Military Services, U.S.A.,

13   incorporated in Maryland on August 23, 1993.  (Dkt. No. 12.)  Courts have taken judicial notice of

14   articles of incorporation as undisputed matters of public record. *See, e.g.*, *Astre v. McQuaid*, No.

15   3:18-cv-00138-WHO, 2018 WL 5617226, at *3 n.1 (N.D. Cal. Oct. 26, 2018) (taking judicial

16   notice of articles of incorporation filed with state of California because their accuracy "cannot

17   reasonably be questioned"); *In re Yahoo! Inc. S'holder Derivative Litig.*, 153 F. Supp. 3d 1107,

18   1117 (N.D. Cal. 2015) (taking judicial notice of articles of incorporation); *Singleton v. Volunteers*

19   *of Am.*, No. C 12-5399 LHK (PR), 2013 WL 5934647, at *2 & n.3 (N.D. Cal. Nov. 4, 2013)

20   (taking judicial notice of articles of incorporation because "publicly recorded").

21   So, the Court GRANTS AMS Defendants' request for judicial notice of the articles of

22   incorporation.  However, the Court's judicial notice does not alone establish AMS, its alter ego, or

23   its predecessor did not exist in any form prior to 1985 or 1993. *See eBay Inc. v. Digital Point*

24   *Sols., Inc.*, 608 F. Supp. 2d 1156, 1164 n.6 (N.D. Cal. 2009) (taking "judicial notice of the fact that

25   the corporate entity known as Digital Point Solutions, Inc. filed articles of incorporation on that

26   date," but noting "the existence of the articles of incorporation does not establish that DPS or any

27   alter ego to DPS did not exist in any form prior to May 14, 2007."); *Bohnert v. Roman Catholic*

28   *Archbishop of San Francisco*, 67 F. Supp. 3d 1091, 1096 n.4 (N.D. Cal. 2014) (while taking

judicial notice of articles of incorporation, noting "the documents do not compel me to accept the arguments for which they are provided").

Plaintiff's opposition brief also includes an exhibit with an AMS "Certificate of Confirmation." (Dkt. Nos. 24, 24-1.) Because the Certificate of Confirmation is not in the complaint, incorporated by reference in the complaint, or judicially noticeable, the Court will not consider it in deciding this motion. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006) (refusing to consider new allegations raised in briefing and noting plaintiff instead could have amended complaint to include allegations).

## II.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Courts often address a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction before a Rule 12(b)(6) motion to dismiss for failure to state a claim. However, as the Court has diversity subject matter jurisdiction, it may in its discretion evaluate the failure to state a claim argument before the personal jurisdiction argument, and it does so here. *See Wages v. IRS*, 915 F.2d 1230, 1234-35 & n.5 (9th Cir. 1990) (explaining while a court without subject matter jurisdiction is "foreclosed by definition from saying anything on the merits," "[w]e have not treated defects in personal jurisdiction similarly" because "[a] court that lacks personal jurisdiction . . . [is] foreclosed from conducting a trial and entering a final judgment against the defendant" and, if the plaintiff also fails to state a claim, neither "disposition" will "'bind' the defendant by finding him liable").

Under Federal Rule of Procedure 8(a)(2), a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the Rule 8 pleading standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). On a motion to dismiss, the court "must take all of the factual allegations in the complaint as true." *Id*. However, this presumption does not apply to "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* Put another way, to avoid dismissal, a complaint must "contain sufficient factual matter" to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct

6

alleged." *Id.* A court also "need not accept as true allegations that contradict matters properly subject to judicial notice, . . . [or] conclusory allegations which are contradicted by documents referred to in the complaint." *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (cleaned up).

### A.     Claims Against AMS

"The corporation comes into existence when its articles of incorporation are filed with the Secretary of State." *Brodsky v. Seaboard Realty Co.*, 206 Cal. App. 2d 504, 515-16 (1962); *see also* Cal. Corp. Code § 200(c) ("The corporate existence begins upon the filing of the articles."); *People ex rel. Boardman v. Town of Linden*, 107 Cal. 94, 101 (1895) ("Until [declaration of incorporation] is filed there is no corporation."). So, "[i]n general, a corporation cannot be liable for actions taken prior to the date of its incorporation." *In re Townshend Patent Litig.*, Nos. C 02-04833-JF, C 02-04836 JF, 2004 WL 1920009, at *5 (N.D. Cal. Aug. 25, 2004); *see also Cappello Global, LLC v. Temsa Ulaşim Araçlari Sanayì Ve Tìcaret A.S.*, No. 2:19-CV-10710-MEMF-KS, 2024 WL 5330030, at *17 (C.D. Cal. Dec. 19, 2024) ("Generally, a corporation is not liable for acts undertaken prior to its organization."); Cal. Corp. Code § 207(g) (allowing corporations to "incur liabilities").

AMS Defendants argue Plaintiff cannot state a claim against them because AMS did not exist between 1974 and 1976. Plaintiff alleges McClellan Air Force Base was "located within" AMS, and AMS "had sole authority and responsibility to control and supervise the ministry of Father John Doe from 1974 to 1976." (Dkt. No. 8 ¶¶ 1, 3.) However, Plaintiff also alleges AMS was "created in 1986," (*id.* ¶ 5), and does not contest AMS Defendants' judicially noticeable evidence AMS was incorporated in 1993, (Dkt. No. 12 at 11). So, Plaintiff has not plausibly alleged AMS existed between 1974 and 1976. Because AMS is a corporation, it cannot incur liabilities for actions taken between 1974 and 1976, prior to its existence.

But, Plaintiff argues AMS Defendants are nevertheless liable as alter egos or successors in interest of a "military diocese for the US armed forces" or ADNY. (Dkt. No. 8 ¶ 5.)

#### 1.     Alter Ego Liability

Alter ego liability requires (1) "'such a unity of interest and ownership that the

7

individuality, or separateness, of the said person and corporation has ceased,'" and (2) "'adherence to the fiction of the separate existence of the corporation would. . . sanction a fraud or promote injustice.'" *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977)). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015); *see also Slack v. Int'l Union of Operating Eng'rs*, 83 F. Supp. 3d 890, 901 (N.D. Cal. 2015) (dismissing alter ego theory based on "conclusory allegation" without "underlying factual allegations to support th[e] conclusion").

Plaintiff alleges "at all relevant times, there existed a unity of interest and ownership among all Defendants and each of them, such that an individuality and separateness between Defendants ceased to exist," and "[t]o continue to maintain the façade of a separate and individual existence between and among Defendants . . . would serve to perpetuate a fraud and injustice." (Dkt. No. 8 ¶ 9.) Plaintiff's "formulaic recitation of the elements of [the] cause of action" is insufficient to plausibly allege alter ego liability. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff also alleges Defendants "purchased, controlled, dominated and operated each other without separate identity, observation of formalities, or any other separateness," but he does not provide any specific facts supporting these allegations. (Dkt. No. 8 ¶ 9.) *See In re Schwarzkopf*, 626 F.3d at 1038 (explaining comingling of funds, disregard of legal formalities, or diversion of assets might suggest unity of interest); *see also Maverick Bankcard, Inc. v. Nurture Sols., LLC*, No. 2:22-cv-02875-ODW (JPRx), 2023 WL 8543508, at *5 (C.D. Cal. Dec. 11, 2023) (dismissing alter ego claim when allegations "consist of statements of law drawn directly from case authority and culminate with the legal conclusion of alter ego liability" and "could appear in any pleading alleging alter ego and are not specific to this case"). Because Plaintiff has not alleged facts supporting a plausible inference AMS operates as the alter ego of the "military diocese for the US armed forces" or ADNY, Plaintiff has not alleged AMS's liability through an alter ego theory. (Dkt. No. 8 ¶ 5.)

8

### 2. Successor Liability

"[S]uccessor liability is an equitable doctrine that applies when a purchasing corporation is merely a continuation of the selling corporation or the asset sale was fraudulently entered to escape debts and liabilities." *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 822 (2013). "Transfer of all or substantially all a corporation's assets is a prerequisite to a finding of successor liability." *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A plaintiff must allege specific facts to support a plausible inference of successor liability as a legal theory. *See id.* (affirming dismissal of successor liability theory when party "made only a conclusory allegation" companies "'comprise successor corporate business entities'").

As to successor liability, Plaintiff alleges only "Defendants were the successors-in-interest . . . of the other Defendants in that they purchased, controlled, dominated and operated each other." (Dkt. No. 8 ¶ 9.) Plaintiff does not allege facts supporting his conclusory allegation AMS was the successor-in-interest of other Defendants—or even factual allegations clarifying which "other Defendants" AMS succeeded. Furthermore, to the extent Plaintiff alleges AMS succeeded ADNY, ADNY's continued existence weakens such allegations. *See Gerritsen*, 116 F. Supp. 3d at 1133 ("[I]mposition of successor liability under the 'mere continuation' doctrine requires that the predecessor entity that was purportedly acquired by the successor entity no longer exist."); *see also Philips v. Cooper Labs.*, 215 Cal. App. 3d 1648, 1660 (1989) (holding no successor liability when corporation "continued as a separate corporation after its acquisition"). And although Plaintiff argues "the new AMS corporation has assumed the title and responsibilities of the military vicarate that pre-existed it," (Dkt. No. 24 at 6), Plaintiff does not allege any assets were transferred to AMS, which is a "prerequisite to a finding of successor liability." *Pac. Gulf Shipping Co.*, 992 F.3d at 897. So, Plaintiff has not alleged successor liability.

Because Plaintiff agrees AMS had not yet been incorporated when Plaintiff's injuries occurred, and because Plaintiff fails to allege facts plausibly supporting AMS's liability under an alter ego or successor liability theory, Plaintiff has failed to state a claim against AMS.

### B.  Archbishop Broglio

Plaintiff alleges Archbishop Broglio, as AMS Archbishop, was "responsible for the funding, staffing, and direction of the . . . McClellan Air Force Base," and, like AMS, "had sole authority and responsibility to control and supervise the ministry of Father John Doe from 1974 to 1976." (Dkt. No. 8 ¶ 2.)  As an initial matter, Plaintiff's allegations Archbishop Broglio had certain authorities and responsibilities as AMS Archbishop between 1974 and 1976 contradict his allegations AMS was "created in 1986" and judicially noticeable evidence of AMS's incorporation, and therefore need not be accepted as true. (*Id.* ¶ 5.)  *See Gonzalez*, 759 F.3d at 1115 (noting court "need not accept as true allegations that contradict matters properly subject to judicial notice").  However, Plaintiff's complaint also lacks sufficient factual allegations to support a plausible inference Archbishop Broglio, specifically, committed the alleged torts. Plaintiff does not provide any facts supporting his allegations Father John Doe's sexual abuse "was or should have been reasonably foreseeable to" Archbishop Broglio, or explaining how Archbishop Broglio "failed to provide reasonable supervision of Father John Doe" or "breached [his] duty" to supervise Plaintiff. (Dkt. No. 8 ¶¶ 49, 52, 67.)  So, Plaintiff has not alleged facts sufficient to state claims against Archbishop Broglio.

Plaintiff's contention Archbishop Broglio is liable as a "successive appointment from the line of Archbishops who had previously served as" AMS Archbishop is unavailing. (Dkt. No. 24 at 4-5.)  First, Plaintiff does not explain the legal standard for imposing liability on Archbishop Broglio as a "successive appointment."  Second, even if Archbishop Broglio derived liability from a prior AMS Archbishop, there was no AMS Archbishop between 1974 and 1976 from whom he would derive liability; instead, Plaintiff alleges an individual served as "leader of the military diocese" during that period. (Dkt. No. 8 ¶ 5.)

Plaintiff's argument he has pled "extensive facts against AMS and Archbishop Broglio demonstrating involvement in the [Catholic Church's] cover-up" is also irrelevant. (Dkt. No. 24 at 7.)  To support his argument, Plaintiff references the Vatican's 1962 Papal Instruction, "Defendants' protocols," and the "Dallas Charter." (Dkt. No. 8 ¶¶ 13, 14, 17.)  However, Plaintiff does not allege any specific actions AMS or Archbishop Broglio took to help cover up Father John

10

1  Doe's sexual abuse. That California's Code of Civil Procedure Section 340.1(b) allows treble

2  damages against "a defendant who is found to have covered up the sexual assault of a minor" does

3  not excuse Plaintiff from stating facts to plausibly AMS Defendants participated in a cover up.

4  Because Plaintiff has not alleged facts plausibly supporting claims against AMS or

5  Archbishop Broglio, his claims against the AMS Defendants are dismissed.

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

To exercise personal jurisdiction over a nonresident defendant, a court must establish the defendant had "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). Personal jurisdiction can be either general or specific. General personal jurisdiction exists "when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citation omitted). And specific personal jurisdiction exists when a defendant takes "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 359 (cleaned up). The plaintiff "bears the burden of establishing" personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). The plaintiff "need only make a prima facie showing of jurisdictional facts," and a court "resolve[s] factual disputes in the plaintiff's favor." *Id.*

#### A. General Jurisdiction

General jurisdiction exists only when a defendant's "affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (cleaned up). For an individual, general jurisdiction exists in their domicile. *See id.* at 137. For a corporation, general jurisdiction exists in its "place of incorporation and principal place of business." *See id.* Plaintiff alleges Archbishop Broglio is incorporated with a principal place of business in Washington, D.C., so his domicile is Washington, D.C. (Dkt. No. 8 ¶ 2). AMS is incorporated in Maryland, with its principal place of business in Washington, D.C. (*Id.* ¶ 3.) So, the Court does not have general personal jurisdiction over AMS Defendants in California.

### B. Specific Jurisdiction

The Ninth Circuit "use[s] a three-prong test for analyzing claims of specific jurisdiction." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). "First, the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* (cleaned up). "Second, the claim must arise out of or relate to the defendant's forum-related activities." *Id.* "Finally, the exercise of jurisdiction must be reasonable." *Id.* If the plaintiff "satisf[ies] both of the first two prongs, the burden then shifts to the defendant to . . . [show] the exercise of jurisdiction would not be reasonable." *Id.* (cleaned up). As to the first prong, a plaintiff must show the defendants "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (citation omitted) (explaining purposeful direction test applies to tort claims).

To support purposeful direction, Plaintiff argues AMS Defendants "assign[ed] known pedophile priests to minister to children at McClellan Air Force Base" and "cover[ed] up childhood sexual abuse by priests at the McClellan Air Force Base and other military bases in California." (Dkt. No. 24 at 10.) Plaintiff's arguments for personal jurisdiction fail for reasons similar to his failure to state a claim. As explained above, Plaintiff has not alleged facts to support a plausible inference AMS took any actions or incurs liability for others' actions between 1974 and 1976, before AMS existed. And Plaintiff does not state any facts supporting his conclusory allegations AMS Archbishop Broglio "[a]t all material times hereto, . . . conduct[ed] business in" California, and was "responsible for the [] staffing" of the McClellan Air Force Base. (Dkt. No. 8 ¶ 2.) Because Plaintiff does not plausibly allege AMS Defendants committed any intentional acts, he cannot show purposeful direction or specific personal jurisdiction.

So, the Court also dismisses Plaintiff's claims against AMS Defendants because Plaintiff has not shown the Court has personal jurisdiction.

## IV. MOTION TO TRANSFER

In his brief opposing AMS Defendants' motion to dismiss, Plaintiff also moved for transfer of venue to the Eastern District of California, the Southern District of New York, or Washington, D.C. (Dkt. No. 24 at 11.) In response to the Court's order for supplemental briefing on Plaintiff's motion for transfer of venue, AMS Defendants opposed Plaintiff's motion for transfer of venue. (Dkt. Nos. 30, 33.) Plaintiff then clarified he "does not object to venue in San Francisco but felt an obligation as an officer of the court to raise this question in his first filed pleadings in the removed actions." (Dkt. No. 34 at 2.) Plaintiff now argues AMS Defendants "have waived any venue objections and the action should not be transferred," and "it is likely there is no other jurisdiction than California that this case could have been brought." (*Id.* at 2-3.) Because neither party objects to venue, the Court DISMISSES Plaintiff's motion to transfer venue.

## CONCLUSION

Because Plaintiff has not stated a claim against or plausibly alleged personal jurisdiction over AMS Defendants, the Court GRANTS AMS Defendants' motion to dismiss the claims against them. Leave to amend would be futile as there is no legal basis for AMS Defendants' liability. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal."); *see also Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) ("[T]he district court need not grant leave if it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted). If Plaintiff believes there are additional persons or entities over which the Court has personal jurisdiction and which may be liable for the alleged conduct, he may move for leave to amend to add new defendants if the remaining Defendant does not stipulate to amendment.

This Order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: October 23, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

13